HEANEY, Circuit Judge,
dissenting.
I agree that the sentences for Bucken-dahl, Ringis, Johnson, and Valdivia-Cardo-na should be affirmed for the reasons stated in the majority's opinion. I disagree with the majority, however, with regard to Clark, and for that reason I respectfully dissent. The Northern District of Iowa's denial of § 1BL8 protection to Clark resulted in an increase in his base offense level from 28 to 36, yielding significant prejudice to him. Accordingly, I would affirm the downward departure granted to Clark by the district court.
The goal of the Guidelines was to eliminate disparity in sentencing. Then-Chief Judge Breyer explained that the Commission's research in sentencing disparity showed that "the region in which the defendant is convicted is likely to change the length of time served from approximately six months more if one is sentenced in the South to twelve months less if one is sentenced in Central California." Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises upon Which They Rest, 17 Hofstra L.Rev. 1, 4 (1988). Regrettably, there is as much re- *765 gional disparity in sentencing now as there was prior to the creation and enactment of the Sentencing Commission and Guidelines. The origin of that disparity, however, has shifted from the judiciary to politically appointed prosecutors. Clark’s circumstances are a perfect example of this phenomenon.
The Northern District of Iowa has a blanket policy of refusing to grant eligible defendants § 1B1.8 protection, while its sister district to the south routinely provides such protection, as do the majority of the ninety-four federal districts in the nation. This policy has the effect of forcing defendants to serve the mandatory minimum sentence, or increasing the sentences of defendants who incriminate themselves when providing the government with information about the unlawful conduct of others. Similarly situated defendants in the Northern and Southern Districts of Iowa are sentenced differently due to prosecuto-rial discretion.
The majority asserts that Congress was unconcerned with disparity in sentencing arising from the exercise of prosecutorial discretion. I believe otherwise, and Judge William W. Wilkins supports my conclusion. He writes that the Guidelines system provides “protections against the possibility of prosecutors’ undue influence through charging and other plea practices.” Response to Judge Heaney, 29 Am.Crim. L.Rev. 795, 798 (1992). Furthermore, he implies that any discretion in sentencing that prosecutors may have gained with the implementation of the Guidelines results from the courts’ abdication of its own authority to control the fairness of, and perhaps the availability of, plea bargains. Id. at 805. True to Judge Wilkins’s admonition, the majority has sabotaged the judiciary’s duty to ensure fair and appropriate sentencing by authorizing prosecutors in the Northern District of Iowa to uniformly increase the time served by defendants who are eligible for leniency in sentencing.
It is essential that prosecutors fulfill their duties in a manner which best furthers the government’s interests. Congress has explicitly stated that § 1B1.8 facilitates this endeavor; such protection is requisite to the promotion of justice. It goes without saying that a prosecutor can decide in an individual case that he or she is not going to request a downward departure. However, neither the prosecutor nor the district court has the right under a sentencing guidelines regime to uniformly refuse to apply a section of the Guidelines that the Commission has deemed important.
The disparity in sentencing that results from the Northern District of Iowa’s blanket denial of § 1B1.8 protection is every bit as offensive as the judicial discretion that Congress so vehemently rejected when it created the Guidelines. If we must live with the Guidelines and their policy objectives, we must insist upon an even-handed application of them. I would therefore affirm the district court’s downward departure.